UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
Covington Division

| | |
|---|---|
| IN RE: | : |
| | : **Chapter 13** |
| **MICHAEL S. MORGAN** | : **Case No. 14-21014** |
| | : **Judge Tracey N. Wise** |
| **Debtor** | : |
| | : |

**MEMORANDUM OPINION AND ORDER**

On November 4, 2014, this matter came before the Court for an evidentiary hearing on the Motion for Relief from Stay and Co-Debtor Stay ("Motion for Relief") [Doc. 16] filed by Vanderbilt Mortgage and Finance, Inc. ("VMF"), VMF's Objection to Confirmation of Plan ("Objection") [Doc. 12], and on the Debtor's response [Doc. 18]. At the hearing, the parties requested and were given time to file supplemental briefs, which have been filed.

VMF seeks relief from stay with respect to the real estate jointly owned by the Debtor and his daughter, Sandra K. Morgan Parton ("Ms. Parton") located at 10417 Michael Drive, Florence, Kentucky ("Old Residence"). In its Objection, VMF challenges the Debtor's ability to change the Old Residence from his principal residence on the eve of bankruptcy.[1] These matters are now ripe for decision.

Having reviewed the evidence presented and considered the arguments of counsel, the Court will grant VMF's Motion for Relief. The following constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), (L).

---

[1] VMF also challenged Debtor's valuation of the Old Residence on which the Court reserved ruling.

Debtor filed his chapter 13 petition on July 3, 2014, in which he lists his address as 10425 Michael Drive, Florence, Kentucky ("New Principal Residence"). Debtor has no legal interest in this property which is titled to his former wife, Emma Morgan ("Ms. Morgan"). However, for reasons explained below, he now claims this property as his "principal residence."

On June 13, 2008, Ms. Parton and Debtor executed a promissory note and security agreement ("Note") in favor of VMF in the amount of $107,750.75 for the purchase of a Clayton 2007 mobile home ("Mobile Home") that was placed on the Old Residence property. The Note was also secured by a mortgage dated June 13, 2008, granting VMF a mortgage lien in the Old Residence realty. Although the Mobile Home was originally titled in the names of both Ms. Parton and Debtor, it was converted to realty on June 26, 2010. At the time of the conversion, Debtor did not hold an interest in the realty which comprised the Old Residence.[2]

The parties stipulated that there is no dispute regarding the validity of the signatures on loan documents or attachments to the Proof of Claim filed by VMF [Claim No. 2] or the amount claimed therein as being owed on the Note as of the date of filing of the Proof of Claim ($98.215.25). At the time of the filing of the Motion for Relief, no payments had been made to VMF since December 2013, and the Debtor agrees that there is no equity in the Old Residence.

Six months prior to this Debtor's bankruptcy filing, Ms. Parton had filed a chapter 7 petition (Case No. 14-20058) in which she listed an intention to surrender the Old Residence to VMF. As noted above, at that time she was the sole title owner of the Old Residence. Ms. Parton obtained a discharge on May 2, 2014, and her case was closed on May 29, 2014. The record does not reflect what action, if any, either Ms. Parton took to surrender the Old Residence to VMF or VMF took to foreclose its mortgage lien on the Old Residence following her bankruptcy.

---

[2] Previously, on October 9, 2007, Debtor's Old Residence was conveyed to Ms. Parton by her mother, Ms. Morgan, "in consideration of the love and affection of a parent for her daughter."

2

On June 27, 2014, Ms. Parton conveyed the Old Residence to herself and Debtor with rights of survivorship "in consideration of the love and affection of a daughter for her parent." Debtor's counsel prepared the deed which was recorded on June 30, 2014, in the Office of the Boone County Clerk. Three days later, Debtor filed his chapter 13 petition herein. His Statement of Financial Affairs sets forth that he had resided at the Old Residence from 2008 until June 2014. His chapter 13 plan proposes to bifurcate VMF's claim secured by the Old Residence—treating $27,000 as secured and the balance as unsecured. The Debtor contends that because the Old Residence is no longer his principal residence, he is not prohibited from modifying same by the anti-modification provisions of 11 U.S.C. § 1322(b)(2).[3] The Debtor's schedules do not list any debt secured by the New Principal Residence.

Debtor's counsel stated at the hearing that the decision to claim the New Principal Residence rather than the Old Residence as the Debtor's "principal residence" on the eve of bankruptcy was so Debtor could "avail himself of provisions of § 1322" and that this was done on counsel's advice.

At the hearing, the Debtor testified as to his living arrangements. He stated that since 2007, he has split his living arrangements "about 50/50" between the Old Residence residing with his daughter, Ms. Parton, and the New Principal Residence residing with his former wife, Ms. Morgan. Although divorced from Ms. Morgan for more than 30 years, Debtor testified that this arrangement was precipitated by the death of his son in 2007 and the desire of Debtor, Ms. Parton and Ms. Morgan "to be a family again." Debtor states that he has never lived at either property

---

[3] Section 1322(b)(2) provides:

>   (b) Subject to subsections (a) and (c) of this section, the plan may—
>   . . .
>   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

100 percent of the time. He takes care of the maintenance on both properties and is the only one with a job. He testified that Ms. Parton and Ms. Morgan take care of him by shopping, preparing meals, and taking care of paying bills. He has a bed at both places and eats at whichever residence he is working at meal times. Debtor testified that he is the main bread winner for Ms. Parton and Ms. Morgan. However, while Debtor may be the only one of the three with a job, Schedule I reflects that Debtor's monthly net income from his employment is only $465. The remainder of the $3,537 in monthly income itemized in Schedule I is comprised of $1,511 from his social security benefits and a like amount, $1,561, is contributed by his daughter and ex-wife from their social security benefits. Thus, the evidence does not reflect that Ms. Parton and Ms. Morgan are financially dependent upon Debtor.

## I. Motion to Modify Stay Against the Debtor's Interest in the Old Residence.

### A. 11 U.S.C. § 362(d)(1).

VMF originally asserted that it was entitled to relief from stay for cause under § 362(d)(1) on the basis that VMF's interest is not adequately protected because of Debtor's failure to make payments on the Note. Subsequent to the filing of the Motion for Relief, Debtor amended his plan to provide that VMF receive $270 per month as adequate protection payments prior to confirmation. VMF has not asserted that this payment is insufficient to protect its interest pending confirmation, and the Court makes no ruling on this claim.

### B. 11 U.S.C. § 362(d)(2).

VMF further asserts that it is entitled to relief under § 362(d)(2) because the Debtor does not have any equity in the Old Residence, and that property is not necessary to an effective reorganization. It is undisputed that there is no equity in the Old Residence, but Debtor asserts that it is necessary for his effective reorganization. The Debtor has the burden of proof on this issue. *See* 11 U.S.C. § 362(g)(1), (2) (VMF, as the party requesting relief, has the burden of proof

4

of the issue of Debtor's equity; the Debtor, as the party opposing the Motion for Relief, has the burden of proof on all other issues).

Prepetition, from at least 2008 until June 2014, the Debtor's principal residence was the Old Residence. However, immediately prior to filing his petition, he purports to have changed his principal residence to the New Principal Residence—real estate owned by his ex-wife in which he has no ownership interest. This notwithstanding, he contends that the Old Residence, is necessary for his effective reorganization. Stated differently, the Debtor wants this Court to determine (i) that his Old Residence is necessary for his effective reorganization, and (ii) that his claim of a new principal residence is sufficient to allow the debt on the Old Residence to be modified. Resolution of the first issue makes adjudication of the second unnecessary.

The Old Residence is not necessary for the Debtor's effective reorganization within the meaning of § 362(d)(2).

> In cases under chapters 12 and 13, debtors do not really reorganize. Instead, they are rehabilitated. Although section 362(d)(2) uses the term "necessary for an effective *reorganization*," the better approach is to recognize that if property is necessary for the debtor's effective rehabilitation, relief from stay should be denied.

3 COLLIER ON BANKRUPTCY ¶ 362.07[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The Supreme Court has equated "necessary" with "essential." *Cf. United Sav. Assoc. of Tx. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (§ 362(d)(2) requires debtor to show "that the property is *essential* for an effective reorganization *that is in prospect*.") (first emphasis added).

> This court believes that a debtor's home is *necessary* to an effective reorganization only if the property is not fungible with other living arrangements meeting the debtor's minimum living requirements. "Necessary" connotes "essential" or "indispensable" and must be given its ordinary meaning in the absence of contrary legislative intention. Fungibility, or the absence of suitable alternative living arrangements, is an obvious application of the notion of "indispensable." To complete the test of fungibility, it is appropriate to reconcile fungibility with the

5

>   debtor's minimum living requirements.  Measuring fungibility against the
>   debtor's *minimum* living requirements is consistent with congressional use of the
>   word "necessary" and allocates the burden to the debtors to demonstrate genuine
>   need for the property.  If the court determines that these debtors can "effectively
>   reorganize" in a rented apartment, then the debtors' house would not be
>   "*necessary*" to an "effective reorganization."  If because of changes in interest
>   rates, the absence of credit, the property's proximity to work, schools or church,
>   moving costs, or the availability of alternative housing, these debtors cannot secure
>   an appropriate place to live, the court may find the property "necessary" for
>   § 362(d)(2)(B) purposes.

*In re Gregory*, 39 B.R. 405, 411 (Bankr. M.D. Tenn. 1984) (citations omitted) (footnote omitted).

Based on the Debtor's testimony, the Court concludes that while the Old Residence may be a convenience for the Debtor, he now claims a new residence which meets his minimum daily needs—both meals and a bed are available there.  That the Debtor now chooses to make his ex-wife's house his residence, without more, will not be disturbed by the Court.[4]  However, what will not be allowed is an attempt to retain two residences, with no proof that either alone is insufficient to meet the Debtor's minimum (necessary) living requirements.  His claim that the Old Residence is necessary because the New Principal Residence is too small for his adult daughter Ms. Parton, his ex-wife Ms. Morgan, and him to live in together "comfortably" [Doc. 37 at 3], is neither persuasive nor credible.  Debtor did not elaborate on why the New Principal Residence is "too small."  "Comfort," without more, is insufficient to raise a second abode to the level of "necessary."  As found above, the Debtor's adult daughter, with income of her own, resides in the Old Residence, and although the Debtor may do maintenance there, his testimony proves that alternate and acceptable living arrangements are readily available at the New Principal Residence which he chose at the outset of this case.  The Debtor has failed to meet his burden of proving that the Old Residence is necessary for his effective rehabilitation.

---

[4] *But see* discussion *infra* Part IV.

**II. Motion to Modify Co-Debtor Stay Against Daughter's Interest in Old Residence**.

VMF also seeks relief from the co-debtor stay to enforce its liens in Ms. Parton's interest in the Old Residence. Section 1301(a) provides:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
>
> (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a). Although Ms. Parton, has been discharged from personal liability to VMF through her own bankruptcy, § 1301 applies not only to in personam collection actions, but also to in rem actions. *In re Jones*, 106 B.R. 33, 35 (Bankr. W.D.N.Y. 1989) (finding no support for creditor's position that co-debtor stay applies only to in personam actions). Thus, VMF requests relief from the co-debtor stay. As to such relief, the Bankruptcy Code provides:

> (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
>
> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
>
> (2) the plan filed by the debtor proposes not to pay such claim; or
>
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301(c). VMF points out that in her own bankruptcy case, Ms. Parton's stated intention was to surrender her rights in the Old Residence to VMF. Neither Debtor nor Ms. Parton challenges VMF's request for modification of the co-debtor stay other than Debtor's claim that the Old Residence is necessary for Debtor's reorganization. Finding that claim to be without

7

merit, the Court will grant VMF's request to modify the stay to enforce its mortgage in Ms. Parton's interest in the Old Residence.

### III. Motion to Modify Stay Against Former Residence in Subsequent Case(s).

VMF further asserts it is entitled to relief from stay pursuant to § 362(d)(4), which provides in part:

> (4) With respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.   Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).   If stay modification as to the Old Residence is granted under this section, that relief would be binding in any subsequent case filed within two years in which the Old Residence was affected.   One court reviewed the parameters of § 362(d)(4) as follows:

> Due to the extraordinary impact of this remedy, a creditor requesting such relief has a substantial burden of proof.   Section 362(d)(4) requires that three elements be established: i) the debtor engaged in a scheme, ii) to delay, hinder and defraud the creditor, and iii) which involved either the transfer of property without the creditor's consent or court approval *or* multiple filings. . . .
>
> The majority of bankruptcy courts has concluded that the second element— intent to hinder, delay *and* defraud are in the conjunctive, meaning each must be satisfied in order for relief to be granted to the movant under Section 362(d)(4). . . .
>
> The elements of fraud are: i) false representation of a material fact; ii) knowledge of or belief in its falsity by the person making it; iii) belief in its truth by the person to whom it is made; iv) intent that it should be acted upon; and v) detrimental reliance upon it by the person claiming to have been deceived.

> Herein, the Bank makes only a conclusory allegation that the Debtor has acted with fraudulent intent without specifying concrete facts or other evidentiary proof to prove its claim by a preponderance of the evidence standard. Thus, the Bank is not entitled to in rem relief under Section 362(d)(4).

*In re Poissant*, 405 B.R. 267, 273-74 (Bankr. N.D. Ohio 2009) (citations omitted). Here, the Court finds that the Debtor acted in reliance on the advice of counsel. There is no contention that his reliance was not reasonable; thus, there is insufficient evidence of Debtor's alleged fraudulent intent. *See Buckeye Ret. Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008) (debtor's reasonable reliance on advice of counsel was evidence of lack of fraudulent intent).

VMF is not entitled to in rem relief under § 362(d)(4).

### IV. VMF's Objection to Confirmation.

VMF's Objection to Confirmation is grounded primarily on the claim that the Debtor may not elect a new principal residence on the eve of bankruptcy to avoid applying the anti-modification provision of § 1322(b)(2) to his Old Residence. The Court's decision that VMF is entitled to relief from stay as to the Old Residence on the basis that the property is not necessary for the Debtor's effective rehabilitation moots this issue entirely. Nothing in this decision, or the Court's underlying analyses, shall be read to adjudicate, condone or condemn the Debtor's attempt to establish a new principal residence within the meaning of 11 U.S.C. § 1322(b)(2). This issue is not reached by the Court.

Based on the foregoing, IT IS HEREBY ORDERED:

1. VMF's Motion for Relief from Stay and Co-Debtor Stay [Doc. 16] is GRANTED.

2. VMF's Objection to Confirmation [Doc. 12] is DENIED as MOOT.

3. Within fourteen days, the Debtor may file an amended plan in conformity herewith or a notice of conversion to chapter 7; otherwise, the within case shall be dismissed.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Tuesday, February 03, 2015
(tnw)